## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

CHARLES DANTE PATTERSON, JR.          *

Plaintiff                                              *

v                                                         *          Civil Action No. JFM-15-3303

CON MED, et al.                                   *

Defendants                                          *

***

### MEMORANDUM

Defendant Con Med filed a motion to dismiss the above-entitled civil rights action and defendant Richardson filed a motion to dismiss or for summary judgment. ECF 15 and 20. Plaintiff opposes the motions. ECF 25. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendant Con Med's motion to dismiss shall be granted and defendant Richardson's motion, construed as a motion for summary judgment, shall be granted.

Also pending are plaintiff's motions for leave to amend the complaint (ECF 12 and 23) and motion for extension of time to file a response (ECF 22). The motions for leave to amend shall be denied in part and granted in part. The motion for extension of time shall be denied as moot in light of receipt of plaintiff's opposition response.

### Background

Plaintiff who was, at all times relevant to this case, incarcerated at the Baltimore County Detention Center in Towson, Maryland,[1] asserts he suffered a dislocated finger for which treatment was unnecessarily delayed. He claims that on September 9, 2014, his finger was injured during a basketball game. ECF 1 at p. 1. He was immediately taken to the medical unit

---

[1] Plaintiff is currently incarcerated at Western Correctional Institution, a Maryland Department of Public Safety and Correctional Services facility.

where Plaintiff informed staff he could not move his finger. *Id.* His finger was wrapped in gauze, he was given 800 mg of Motrin, and prescribed 600 mg of Motrin to be administered twice daily for the following week. *Id.*

On September 10, 2014, Plaintiff's finger was x-rayed and it was established that his finger was dislocated. *Id.* Plaintiff states he continued to request stronger medication to treat the pain, but his requests were denied. *Id.* at pp. 1 – 2.

On September 12, September 21, and October 9, 2014, Plaintiff filed complaints with the administration of the detention center seeking treatment to get his "injury fixed" before the damage became permanent. *Id.* at p. 2. He states that all responses to his complaints were that the investigations were concluded. *Id.*

Plaintiff claims that from September 9 to 25, 2014, he was housed around violent offenders with an injured finger and was left in general population. *Id.* He asserts that the entire time he was in "extreme pain" and resorted to "constantly begging" for treatment or medication to alleviate his pain. *Id.*

Plaintiff states he became so desperate for assistance he called Internal Affairs, spoke with Detective Richardson, and asked him to call on Plaintiff's behalf as Plaintiff did not have family support. Shortly after the call, plaintiff claims Sgt. Brown came to him and told him not to make those phone calls because "they only deal with security issues." ECF 1 at p. 2.

Plaintiff states he spent two weeks sitting in a cell suffering in pain. He claims when he "made it to the hospital"[2] he was seen by Dr. Ianuzzi, who told him that the finger would have to be broken again because it had begun to set in the position it was dislocated. *Id.* at p. 2. Plaintiff's finger was injected with lidocaine for the procedure and his finger was placed in a cast. *Id.*

---

[2]     Plaintiff does not state when he was taken to the hospital.

2

Upon Plaintiff's return to the detention center, he claims the lidocaine began to wear off and he "was stuck in a cell banging on the door to receive medication" for the pain. *Id.* Correctional officers contacted medical staff on Plaintiff's behalf and were informed that plaintiff could not receive medication until 10 a.m.. *Id.* Plaintiff states he received the lidocaine injection at approximately 2 or 6 p.m.. *Id.* Because in plaintiff's view the lidocaine would have completely worn off by the time he was provided with pain medication, he requested a complaint form. *Id.* He states his request for the form was denied.

The next morning, after plaintiff received his medication, he asked when he would be receiving the next dose. Plaintiff was informed that the prescription was only for two days and that after the two days expired, he would receive Motrin. *Id.* at pp. 2 – 3. Plaintiff states that Dr. Ianuzzi prescribed Tylenol with Codeine following the procedure, but the medical staff at the detention center took him off of that medication after one day. *Id.* at p. 3.

Plaintiff alleges that the process of having his finger re-broken caused extreme pain, but he was given only Motrin for the pain. In addition, he claims he was prescribed therapy for his finger which was delayed by both detention center staff and Con Med, the medical contractor. *Id.* He states the hand care specialist told him that he would not regain full mobility of his pinky finger or his ring finger because of the delay in treatment. *Id.*

During the time plaintiff was recovering from treatment, he states he was still housed in the same unit and was "jumped by several people." *Id.* Plaintiff was moved to disciplinary segregation as a result, but still attended therapy sessions. *Id.* As relief, plaintiff seeks monetary damages. *Id.*

Defendant Con Med moves to dismiss the complaint against it as there is no claim implicating the corporate entity's policies or procedures and *respondeat superior* liability is

unavailable in a claim filed pursuant to 42 U.S.C. §1983. ECF 15.

Defendant Deborah Richardson, who is the facility administrator for Baltimore County Detention Center, moves for dismissal or summary judgment. ECF 20. In support thereof, Richardson provides an affidavit from Medical Liaison Officer Cosgrove, who investigated plaintiff's complaints regarding his medical attention while confined at the detention center. ECF 20-2.

The additional facts provided by Richardson indicate that plaintiff was seen the day his finger was injured, administered 800 mg of Motrin, received a splint for his finger, and had an x-ray ordered for the following day. ECF 20-2 at p. 2. On September 10, 2014, plaintiff received the x-ray which confirmed his finger was not broken, but was dislocated. Dr. El-Bedawi ordered an immediate referral to the orthopedic clinic for evaluation and treatment. *Id.* at p. 3.

On September 11, 2014, Dr. El-Bedawi tried unsuccessfully to reduce the dislocation in plaintiff's finger. *Id.* at p. 3. The referral for an outside orthopedic clinic was then approved on September 16, 2014, and the process for scheduling an appointment began. *Id.*

On September 17, 2014, plaintiff was seen for complaints of uncontrolled pain. At that time plaintiff's finger was still swollen and a new ace wrap was applied. In addition, a "stat dose" of 650 mg Tylenol was provided and plaintiff was advised that an orthopedic appointment was being scheduled. *Id.*

On September 25, 2014, plaintiff was sent to an orthopedic specialist at Union Memorial Hand Clinic for evaluation and treatment. There, the diagnosis of dislocation at the PIP joint was confirmed and two attempts at reduction of the dislocation were made under local anesthesia. Plaintiff's finger was splinted in a fixed position to retain the reduction. *Id.*

The hand clinic prescribed narcotic pain medication as well as physical therapy two to

three times a week for four weeks, and instructed plaintiff to return in two weeks. Discharge instructions advised plaintiff to keep the splint on his finger at all times other than when he was in therapy. Plaintiff returned to the detention center with a splint on his finger. *Id.*

On October 8, 2014, a follow-up x-ray revealed that plaintiff's finger joint was still dislocated. Plaintiff returned to Union Memorial for a follow-up appointment on October 14, 2014. It was then noted that plaintiff had "significant stiffness to left small finger and requires formal therapy for improvement in motion." *Id.* at p. 4. The plan was for plaintiff to return for follow-up in two weeks. *Id.*

On October 30, 2014, plaintiff returned to Union Memorial for physical therapy. Plaintiff was given a metacarpal blocking splint to "use for exercise for several days and [a] Flexion glove to wear with the [metacarpal] blocking splint." *Id.* Plaintiff's treatment plan was revised to include continuation of physical therapy twice a week for six weeks. Plaintiff continued to receive physical therapy through January 21, 2015. No further appointments were scheduled by the hand clinic following that date. *Id.*

With regard to the conditions of plaintiff's confinement, Richardson avers that at no time was plaintiff exposed to cruel and unusual punishment and he received the benefit of due process prior to the loss of any privileges. In support thereof, Richardson provides the affidavit of Deputy Director Thomas Fitzgerald. ECF 20-3. Fitzgerald provides the following additional facts.

Upon arrival at the detention center, inmates are asked if they have known enemies incarcerated at the facility by a Commitment Specialist Processing Officer. When a known enemy is identified, the staff member is required to enter a "keep separate" order into the Jail Management System. ECF 20-3 at p. 2. Plaintiff was transferred from intake housing to general

population on March 11, 2014. *Id.*

On April 23, 2014, plaintiff failed to lock into his cell. After a disciplinary hearing, plaintiff was sanctioned with 5 days of "lock-in" while remaining in a general population housing unit. Prior to the imposition of the sanction, and pursuant to detention center policy, the incident report, charges, and recommended disciplinary action are read to the inmate before the hearing. *Id.*

On May 8, 2014, plaintiff was moved from general population to disciplinary restrictive housing after he failed to obey the order of a correctional officer and failed to lock in to his cell. Following a disciplinary hearing, plaintiff received 10 days on disciplinary segregation and returned to general population on May 16, 2014. *Id.* at pp. 2 -3.

On November 23, 2014, plaintiff was involved in a fight that involved several inmates. Although plaintiff maintained he had been the peace-keeper in the incident, he was found guilty of assaulting an inmate, fighting, failure to lock-in, and failure to obey the order of a correctional officer. On November 24, 2014, he was moved to disciplinary segregation to serve his sanction of 15 days; he returned to general population on December 9, 2014. At the time the fight broke out, none of the inmates involved were on plaintiff's "keep separate" order in the Jail Management System. *Id.* at p. 3.

On August 1, 2015, plaintiff's privileges were suspended on the general population housing unit for cursing or abusing staff or a fellow inmate. Following a disciplinary hearing, plaintiff received 5 days of lock-in while remaining in general population. On August 5, 2015, plaintiff was released from the detention center. *Id.*

Plaintiff's Motions to Amend Complaint

Plaintiff filed two motions for leave to file an amended complaint. ECF 12 and 23.

Under Fed. R. of Civ. Proc. 15(a), a party may amend its pleading once as a matter of course within 21 days after service, or 21 days after service of a responsive pleading, or 21 days after service of a motion to dismiss. In all other cases, a party may amend its pleading with consent of the opposing party or the court's leave. This court must grant leave to amend when justice so requires. Where the proposed amendment is a futility, leave may be denied. Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir.2008).

In his first motion, plaintiff seeks to add a claim regarding medical bills he has received for services rendered at Union Memorial Imaging. ECF 12 at p. 1. He states he has been billed twice, does not have the money to pay, and asserts Richardson should be required to pay the bill. *Id.* This proposed claim does not state a federal cause of action and leave to amend to include it shall be denied.[3]

Plaintiff also seeks to add a claim for injunctive relief, seeking an order from this court to require defendants to "stop neglecting serious medical complaints." *Id.* at p. 2. The proposed amendment is a moot claim in light of plaintiff's current confinement in state custody in a different correctional facility. Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render

---

[3]      To the extent supplemental jurisdiction over the state law claim is sought, this court declines to exercise jurisdiction. A federal court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed the federal claim. 28 U.S.C. § 1367(c). When the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). For the reasons set forth more fully below, defendants are entitled to summary judgment on the federal claims stated.

the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Leave to amend to add a claim for injunctive relief shall be denied. To the extent plaintiff also seeks to add claims for damages and requests a jury trial, leave to amend to include those requests shall be granted.

In his second motion for leave to amend, plaintiff seeks to add as a defendant, C.J. Anzalone, in his individual and official capacities "for his personal involvement in denying [plaintiff] proper medical treatment." ECF 23 at p. 1. Plaintiff states that Anzalone is the medical liaison at the Baltimore County Detention Center at the time he was injured and that he was "informed" of plaintiff's injury. *Id.* Leave to amend to add Anzalone as a defendant shall be granted and the complaint against him shall be dismissed without requiring service of process, for reasons noted herein.

**Standard of Review**

Motion to Dismiss

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of

the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

 The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677 - 78 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563; citing *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

## Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis
### Medical Claim

The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v.*

*Wolfish*, 441 U.S. 520, 535 (1979).  "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), citing *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988).  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839- 40. "true subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

### Claim against Con-Med

Plaintiff's claim against Con-Med is based on his assertions that the corporate entity is responsible for the conduct of its employees. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under §1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1)

the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

While plaintiff mentions policies with respect to the alleged delay in medical treatment, those policies he relies upon are ones he contends required faster intervention. ECF 25 at p. 2. There is nothing in the complaint or the proposed amendments that would support a finding of supervisory liability on the part of Con-Med. The motion to dismiss filed on behalf of Con-Med will, therefore, be granted.

Claim against Richardson

Plaintiff again relies heavily on Richardson's role as a supervisor and points to his numerous written complaints as evidence that she had reason to know he was suffering and that intervention was required. ECF 25 at p. 2. The outside evidence provided by Richardson, however, belies the assertion she had knowledge of an unreasonable delay in medical care. The sworn affidavit establishes that plaintiff received prompt attention for the injury to his finger and an effort was made to reduce the dislocation shortly after the injury occurred. Plaintiff points to the two-week waiting period to be seen at the Union Memorial clinic as evidence of deliberate indifference. ECF 25. That delay alone, however, is not enough to establish a constitutional claim. Evidence submitted here indicates that in the interim plaintiff was provided with pain medication and a splint. To the extent that plaintiff was not provided with the best and most effective medical treatment available, that failure is not the equivalent to a constitutional

violation. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a §1983 claim unless exceptional circumstances are alleged." *Wright v. Collins,* 766 F.2d 841, 849(4th Cir. 1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances alleged in this case. Richardson is entitled to summary judgment in her favor.

### Other Defendants

Plaintiff's claim as to the medical liaison officer, Anzalone, fails inasmuch as there is no evidence that appropriate medical care for his injured finger was either denied, unnecessarily delayed, or inappropriate. To the extent plaintiff seeks discovery to determine the reasons for Anzalone's termination from employment as well as the reasons for the termination of Dr. El-Bedawi, who plaintiff claims had numerous complaints against him, the information sought is not relevant to the claim asserted. ECF 25 at p. 7. Where there is no delay in treatment, nor any evidence that wrongful conduct occurred, the basis for the termination of an alleged defendant proves nothing regarding the merit of this claim. The claim as to Anzalone is dismissed.

### Other Claims

It is unclear what claims plaintiff is attempting to raise regarding due process and equal protection claims. ECF 1 and 25. To the extent plaintiff alleges defendants failed to protect him from the violence of other inmates because he was put back into general population with a splinted finger, the claim fails. "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997).

The fight involving several inmates where plaintiff was implicated is not alleged to have been targeted at plaintiff, nor is there any allegation that plaintiff sustained an injury as a result of being in the affray. In fact, plaintiff was found culpable for his role in the fight and later required to serve time on disciplinary segregation. There is no evidence that a finger splint on plaintiff's pinky finger made him vulnerable to attack or a target for violence, nor is there evidence that plaintiff lodged complaints with prison officials that his safety was endangered due to his housing assignment in general population. Defendants are entitled to summary judgment on this claim.

A separate order follows.

_____
Date

_____
J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 APR 28 AM 11: 42

CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY